Johnson, C. J. The 4th art. of the 44lh chapter of the Revised Code, declares and defines several offences which are made punishable with death, and amongst others is enumerated the crime of rape. The concluding section of the same article declares that “If any negro or mulatto shall commit any of the before enumerated offences,' which are punished with death, he shall be punished in like manner; and if -such negro or mulatto shall attempt to commit any of such of-fences, although he may not succeed, on a white woman, he shall suffer death on conviction thereof.” The defendant below after the s jury had returned a verdict of guilty against him, filed his two several motions; the one in arrest of the judgment, and the other for a new trial. The court overruled both motions; to each of which opinions he excepted, and has brought the cause into this court for reversal. The motion in arrest directly brings in review the legal sufficiency of the indictment, and that is the question first to be adjudicated by this court. In order to subject a party to the punishment consequent upon an attempt to commit a rape, it is necessary that the facts and circumstances surrounding the transaction should be such as to constitute the crime of rape in case he had succeeded and carried his intent into full effect. Rape is the carnal knowledge of a female forcibly and against her will. 3 Inst. 64. 4 Bla. Com. 210. The indictment must charge the offence to have been feloniously committed, and must contain the technical word “ravished.” 1 Hale 632. But it does not seem so clear whether the averment that the defendant “carnally knew” is necessary to be added. It is urged that the word “ravished” includes the charge of carnal knowledge. Hawk. ch. 1, C. 25, A. 36. 11 H. 4, 14. Co. Lit. 133. 2 Inst. 180. Standf. 81. But as Lord Hale and Lord Coke say, that “ra-puit” and “carnalitur cognovit” ought both to be inserted, it would be very unsafe to omit the latter. 1 Hale 632, 8, 9. 3 Inst. 60. It is of the very essence of the crime of rape that it be done forcibly and against the will of the female on whom it is committed. Every crime consists of certain facts and circumstances, and it is not sufficient to allege in general terms that the offence, by name, has been committed; but it i® necessary to charge those facts and circumstances with requisite certainty, in order that the accused may be apprised of what it is, that he is called upon to answer. The indictment under consideration not only fails to charge that the defendant assaulted Emeranda Clemens, and attempted to ravish and carnally know her forcibly and against her will, but it utterly fails to charge any assault whatever. These are facts that enter into the very essence and definition of the crime, and an indictment in which they are not alleged, is consequently a mere nullity. It might be conceded that every fact charged in the indictment is strictly true, and yet it discloses no of-fence known to the law. If the indictment exhibited no offence, it follows as a necessary consequence that no valid judgment could be founded upon it. The judgment ought, therefore, to have been arrested, and the Circuit Court in refusing to do so necessarily erred. The next question to be decided relates to the propriety of the decision of the Circuit Court in overruling the motion for a new trial. This, as a matter of course, will depend entirely upon tire testimony. Eme-randa Clemens, the party against whom the crime is alleged to have been committed, states that about the eleventh hour of the night of the twelfth of June, 1847, she awoke, and upon extending her hand she felt some person over her in the act of committing a rape; that when she touched him he sprang from the bed ;■ that she lay still about half a minute, and that she then laid out her hand and felt him in the act of getting back into the bed. She further slated that she then ran to the door and opened it, and that the person ran out at the other; that she went around the corner of the house and heard him run through the corn, and the dog after him. She also stated that the feet of the defendant exactly fitted the tracks, and that after being whipped by her husband, he confessed that he was there. Other witnesses were also introduced on the part of the State, who testified as to his declarations and admissions, the most of which were . made under circumstances calculated to give them but little weight or t consideration, in view of the case as made out by tire testimony of Mrs. Clemens. This testimony, loose and unsatisfactory as it was, might have been entitled to more or less consideration in the judgment and sound discretion of the jury in case the crime itself had been established, and it had become necessary to identify the individual who perpetrated it. True it is, that she testified that the party, whoever he was, attempted to commit a rape upon her. She did not detail the facts, but simply stated a conclusion of law. It would be very difficult to conceive what notions she might have entertained as to what acts were requisite to constitute the offence concerning which she testified. It is for the witness to state facts, and it is the province of the jury, under the direction of the court, to say whether those facts constitute the offence laid to the charge of the party accused. The testimony was wholly insufficient in another essensial particular. It was not shown by any witness that the offence, if committed at all, was committed within the tenitorial limits of Dallas county. This was a material allegation in the indictment, and a failure to sustain it by competent proof, would, under any state of case, have proved fatal to the prosecution. It is perfectly manifest, therefore, that the court below erred in refusing a new trial. Judgment reversed.